FILED

2020 Dec-23  AM 10:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

DAVID C. SPENCER,

     Plaintiff,

v.

FRANKLIN AMERICAN HOME MORTGAGE
and CITIZENS BANK, N.A. D/B/A CITIZENS
ONE HOME LOANS,

     Defendants.

Case No. 2:20-cv-02019-SGC

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COME NOW, Citizens Bank, N.A. d/b/a Citizens One Home Loans ("Citizens") and FAMC Subsidiary Company[1] ("FAMC" and together with Citizens, the "Defendants"), and file this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), stating as follows:

## STATEMENT OF FACTS

In this case, Plaintiff David C. Spencer complains about the servicing of a mortgage loan. The Plaintiff obtained the subject loan in 2015 from FAMC, then known as Franklin American Mortgage Company. *See* [Doc. 1-1] at p. 4, ¶ 5. The Plaintiff alleges that "[a]ll loan payments were timely made during the duration of the loan" via automatic debits from his bank account. *Id.* Citizens purchased FAMC in August 2019, and the Plaintiff claims he "was not aware that his home loan had been transferred to Defendant, Citizens . . . until he received a foreclosure notice in June 2020." *Id.* at p. 4, ¶ 7.

---

[1] The Plaintiff incorrectly names FAMC as Franklin American Home Mortgage. FAMC was formerly known as Franklin American Mortgage Company but changed its name in 2018.

"Upon discovering his home loan had been transferred, [Plaintiff] updated his online banking payees to include Citizens and remove Franklin American." *Id.* at p. 4, ¶ 8. The Plaintiff also claims that he "confirmed that his loan payments were current with Citizens." *Id.* at p. 4, ¶ 9. Nevertheless, he claims that "Citizens' representatives continually contacted him and harassed him about past-due payments even though [he] had provided bank statements showing that the payments were made timely." *Id.* Allegedly, a "Citizens' representative conceded to [Plaintiff] that his March 2020 payment had been misapplied." *Id.* This conversation was supposedly with an employee named Preston who told the Plaintiff "that Citizens had returned his March payment because Citizens had 'no idea how to apply it.'" *Id.* at p. 5, ¶ 10.

After this conversation, the Plaintiff claims that he obtained a ledger from Citizens which showed that Citizens "incorrectly applied the March payment to his escrow account and attempted to issue a refund to [him], which he never received." *Id.* at p. 5, ¶ 11. This payment allegedly should have been applied to the loan and this issue "caused his loan to show as past-due, accrue late fees, and cause damage to [his] credit report." *Id.* The April payment was correctly applied. *Id.* at p. 5, ¶ 12. However, an issue allegedly arose with respect to his May 2020 payment, which the Plaintiff says "was lost by Franklin American until it was finally located and deposited three months later on August 4, 2020." *Id.* at p. 5, ¶ 14.

Despite describing only one conversation with Citizens, the Plaintiff claims that "Citizens' representative were often hostile, combative, and not helpful with working with its customer and dealing with the stressful situation of being accused of not making payments when his bank account statements proved otherwise." *Id.* at p. 5, ¶ 13. He also says that "Defendants' representatives refused to repair the damage done to the Plaintiff's credit or properly credit the Plaintiff's account after being requested to do so by the Plaintiff and his attorney." *Id.* at ¶ p. 6,

19. He contends that "[t]hese actions caused the Plaintiff . . . stress, affected his relationships, and ability to work." *Id.* at p. 6, ¶ 18.

Based on these allegations, the Plaintiff alleged the following claims: (1) breach of contract; (2) negligence and wantonness; (3) slander of credit; (4) fraudulent misrepresentation; (5) fraud; (6) negligent and/or wanton training, supervision, and retention; (7) consumer credit protection act; (8) intentional infliction of emotional distress; and (9) intentional infliction of emotional distress. The Plaintiff has again failed to state any claim upon which relief can be granted, and this action should be dismissed.  *Id.* at pp. 5, 6-13, ¶¶ 13, 20-53.

## ARGUMENT AND CITATION OF AUTHORITY

### A.   STANDARD OF REVIEW

This Court may grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if the complaint does not state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In considering a motion to dismiss, the Court must treat all well-plead allegations of the Complaint as true. *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

### B.   THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT

In Count I, the Plaintiff sets forth a claim of breach of contract. Specifically, Plaintiff says that the Defendants "had a contract with the Plaintiff . . . to provide financial services to him

including but not limited to properly servicing his home loan." [Doc. 1-1] at p. 6, ¶ 21. He alleges the Defendants "breached those contracts by failing to properly credit, transfer, or sell his home loan after being demanded to do so." *Id.* at p. 7, ¶ 24. To establish a claim for breach of contract, a plaintiff must show "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Broadway v. State Farm Mut. Auto. Ins. Co.*, 364 F. Supp. 3d 1329, 1337 (M.D. Ala. 2019) (*citing Ex parte Alfa*, 799 So.2d 957, 962 (Ala. 2001)).

First and foremost, the claim fails because it is not clear what contract is at issue. The Plaintiff never identifies any specific agreement other than saying he "obtained home mortgage xxxxxx-x203 from Defendant, Franklin American, in approximately 2015." [Doc. 1-1] at p. 4, ¶ 5. However, within Count I, he says the contract at issue is one to provide financial services to him including but not limited to properly servicing his home loan." *Id.* at p. 6, ¶ 21. The claim is made even more confusing because he brings it against both FAMC and Citizens despite stating that the loan transferred from FAMC to Citizens such that FAMC would no longer be a party to any contract. One cannot bring a breach of contract claim against a party they are not in privity with. *Dunning v. New England Life Ins. Co.*, 890 So. 2d 92, 97 (Ala. 2003). Because the Plaintiff has failed to adequately plead facts to show which contract is at issue, the claim fails and should be dismissed. If this Court was to find that the Plaintiff did adequately allege the existence of a contract, the claim should be dismissed as to FAMC because of lack of privity.

Even if the Plaintiff had properly shown the contract at issue, he has still failed to properly plead the Defendants' alleged noncompliance or damages. Notably, none of the Plaintiff's allegations identify: (i) any particular provision or term of the loan documents that was allegedly breached by the Defendants; (ii) any fees or charges allegedly assessed

improperly; or (iii) why the allegedly improper posting violated the loan documents. When a Plaintiff "fails to cite any contractual provision whatsoever" in their Complaint to support a breach of contract claim, they have failed to state a claim upon which relief can be granted. *Ala. Aircraft Indus., Inc. v. Boeing Co., Inc.*, No. 2:11-CV-3577-RDP, 2013 WL 1178720, at *12 (N.D. Ala. Mar. 20, 2013) (citing *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005)); *see also Burgess v. Religious Tech. Center, Inc.*, 600 F. App'x 657, 664 (11th Cir. 2015) (affirming dismissal of breach of contract claim because "the plaintiffs made vague references to a breach., but they never identified the contract provision that formed the basis of their claims.").

Further, the Plaintiff has failed to show any damages because of any breach of contract. "[A] plaintiff must allege damages to assert a claim for breach of contract." *Cajun Steamer Ventures, LLC v. Thompson*, 402 F. Supp. 3d 1328, 1345 (N.D. Ala. 2019).   Here, the Plaintiff claims only that the alleged breach of contract "caused [him] to suffer injuries and damages including but not limited to damage to his credit file, loss of funds, stress, and physical illness." [Doc. 31] at ¶ 32. This is a conclusory allegation devoid of any facts and is not adequate under *Twonbly* and *Iqbal*. Thus, the Plaintiff has failed to plead facts to support damages, an essential element of a breach of contract claim, and Count I should be dismissed.

Oddly, within the breach of contract count, Plaintiff also attempts to make numerous other claims.  Specifically, Plaintiff alleges "Their actions also did not comply with state law or federal law including but not limited to Alabama's SAFE Act §5-26-1; §5-26-17(l)-(6); The Truth In Lending Act, 12 CFR Part 226, Regulation Z; 12 CFR Part 227.2; Home Ownership and Equity Protection Act 15 U.S.C. § 1 60 1 -02, §§ 1 639-4 1, Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. §2601-2617, Title X of the Dodd Frank Wall Street Reform and

Consumer Protection Act, and the regulations promulgated by the U.S. Consumer Protection Consumer Bureau ("CFPB")." Complaint, ¶ 22.  Paragraph 22 contains only a catalog of acts and does not include any specific allegations with respect to violations of those acts.  Therefore, there are no properly plead allegations with respect to these acts. Further, the Plaintiff has failed to explain how any of the listed acts relates to his claim for breach of contract. To the extent that this laundry list can be considered separate claims, they should be dismissed.

## C.     THE PLAINTIFF'S TORT CLAIMS ARE PREEMPTED BY THE FAIR CREDIT REPORTING ACT

Plaintiff's remaining counts (other than Count VII for violation of the Consumer Credit Protection Act and County IX for injunction) are tort claims based on alleged inaccurate credit reporting to credit agencies, and these claims are preempted by the Fair Credit Reporting Act (the "FRCA"). There are two potentially applicable FCRA preemption provisions, 15 U.S.C. §§ 1681h(e), which states FCRA preempts state law tort claims "except as to false information furnished with malice or willful intent to injure such consumer" and 1681t(b)(1)(F), which stated FCRA preempts all state law tort claims, and provides:

> No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies ....

In 2016, this Court noted, "While 'FCRA preemption of state law torts is an area of little agreement among this district's judges,' there appears to be a growing consensus, which the undersigned joins, that tort claims based on a furnisher's alleged reporting of inaccurate credit information to credit agencies fall within the scope of section 1681t(b)(1)(F), not section 1681h(e), and are preempted." *Bush v. J.P. Morgan Chase Bank, N.A.*, No. 2:15-CV-00769-JEO

(N.D. Ala. Jan. 27, 2016) (quoting *Hamilton v. Midland Funding, LLC*, 2015 WL 5084234, at *6

(N.D. Ala. Aug. 27, 2015)).

> In *Bush*, this Court noted:
>
> Section 1681t(b)(1)(F) preempts "the laws of any state" with respect to any subject matter regulated under § 1681s-2, and § 1681s-2, in turn, imposes duties on furnishers to provide accurate credit information to credit agencies, to investigate credit disputes after notification, and to correct inaccurate information. Consequently, the court agrees with the growing trend finding that § 1681t(b)(1)(F) bars state law tort claims based on inaccurate credit reporting by furnishers.
>
> Here, Bush's negligence and wantonness claims are based, in part, on the allegation that Chase failed to ensure that the credit information it disseminated to the national credit bureaus rose to the level of maximum accuracy and was not false, libelous, or slanderous. The claims are also based on allegations that Chase failed to properly train its employees on the thorough investigation of disputed accounts and failed to remove its adverse reporting once Bush disputed it. Bush's fraud claim is based, in part, on Chase's alleged "dissemination of inaccurate information regarding [his] loan being in default and dissemination of information regarding [his] credit history and credit ... that was known to be false."
>
> In other words, Bush's negligence, wantonness, and fraud claims are based, at least in part, on allegations relating to Chase's alleged failure to fulfill its duties under 15 U.S.C. § 1681s-2 (i.e., its duties to provide accurate credit information to credit reporting agencies, to investigate credit disputes after notification, and to correct inaccurate information). Accordingly, to the extent Bush's negligence, wantonness, and fraud claims are based on such allegations, the claims are preempted by the FRCA, 15 U.S.C. § 1681t(b)(1)(F).

*Bush v. J.P. Morgan Chase Bank, N.A.*, No. 2:15-CV-00769-JEO, 2016 WL 324993, at *1 (N.D.

Ala. Jan. 27, 2016).

Since *Bush*, this Court has continued holding that all state law claims are based on a loan

servicer's alleged failure to fulfill its duties under the FCRA are preempted by the FCRA.  *See,*

*e.g. Perry v. Matrix Fin. Servs. Corp*., No. 2:18-CV-01845-JEO, 2019 WL 1597883, at *8 (N.D.

Ala. Apr. 15, 2019) ("As such, the court concludes that these state law claims are based, at least

in part, on Nationstar and Matrix's alleged failure to fulfill its duties under 15 U.S.C. § 1681s-2.

To the extent that Perry's negligence, wantonness, fraud, false light, libel/slander/defamation claims are based on such allegations, those claims are preempted by the FCRA.").

Other than the Plaintiff's claims for breach of contract, violation of the Consumer Protection Credit Act, and injunction, the Plaintiffs claims are all tort claims are based upon the Defendants' alleged misreporting to credit bureaus. Specifically, Count II for negligence/wantonness, Count III claim for slander to credit, Count IV claim for fraudulent misrepresentation, Count V for fraud, Count IV for negligent and/or wanton training, supervision, and retention, and Count VIII claim for intentional infliction of emotional distress are all based on Plaintiff's allegations that the Defendants misreported to credit agencies. Therefore, these claims are preempted by the FCRA, and should be dismissed from this case.

**D.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR NEGLIGENCE AND WONTONESS**

Plaintiff's claim under Count II for negligence and wantonness is due to be dismissed for several reasons, including: (1) this claim is preempted by the FCRA, as further explained *supra*; (2) there is no negligence or wantonness cause of action under Alabama law for improper mortgage servicing; and (3) the Complaint fails to provide sufficient facts to show that the Defendants acted consciously or with conscious disregard for the consequences of improperly servicing the loan.

1.    <u>Alabama Law Does Not Recognize A Cause of Action for Negligence Or Wantonness Based Upon Improper Mortgage Servicing.</u>

"Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing." *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244 (N.D. Ala. 2013)(*citing Blake v. Bank of Am., N.A.*, 845 F.Supp.2d 1206, 1210–11 (M.D. Ala.2012)); see also *Gregory v. Select Portfolio Servicing, Inc.*, 2016 WL 4540891, *11 (N.D. Ala.2016); *Collins v. BSI*

*Financial Services*, 2016 WL 6776284, *10 (M.D. Ala.2016); *McCleary v. DLJ Mortgage Capital, Inc.*, 2017 WL 4542054, *5 (S.D. Ala.2017); *McClung v. Mortgage Elec. Registration Sys., Inc*., 2:11–CV–03621–RDP, (N.D. Ala. May 7, 2012); *and Jackson v. Countrywide Home Loans, Inc*., 2:11–CV–327–MEF, (M.D. Ala. Mar. 7, 2012).

"The court in *Blake* determined that the mortgage servicer's obligations arose from the mortgage and promissory note to which the parties agreed, not from the duty of reasonable care generally owed to members of the public." *Prickett*, 946 F. Supp. 2d at 1244–45 (N.D. Ala. 2013) (*citing Blake*, 845 F.Supp.2d at 1210). Accordingly, the borrower in *Blake* could not allege a tort claim based on negligent servicing of the mortgage. *Id.*

Here, Plaintiff alleges that Defendants' actions were (i) "negligent because they failed to follow established policies and procedures with respect to account handling" and (ii) "intentional, wanton, and reckless because they failed to follow established policies and procedures with respect to account handling."  Inherent in this allegation is Plaintiff's contention that Defendants owed Plaintiff a duty to act reasonably in servicing his mortgage. As in *Blake*, the duties and breaches alleged by Plaintiffs clearly would not exist but for the contractual relationship between the parties. Moreover, there is no duty to the general public to properly service mortgage accounts. Because all the duties Plaintiff contends the Defendants breached are based on contractual agreements between the parties, Plaintiff's claims for negligence and wantonness are not legally cognizable under Alabama law, and Count II should be dismissed from this action.

2.      The Complaint Fails To Provide Sufficient Facts To Show That The Defendants Acted Consciously Or With Conscious Disregard For The Consequences Of Improperly Servicing The Loan.

The Alabama Supreme Court has defined wantonness as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Beale v. Ocwen Loan Servicing, LLC*, No. 7:15-CV-00397-LSC, 2015 WL 3767246, at *4 (N.D. Ala. June 17, 2015)(*citing Stone v. Southland Nat'l Ins. Corp*., 589 So.2d 1289, 1291 (Ala.1991)). "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Ellis v. Bank of Am. NA*, No. 2:19-CV-00310-RDP, 2019 WL 4644458, at *6 (N.D. Ala. Sept. 24, 2019) (*citing Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994).

The Plaintiff's complaint fails to provide sufficient facts to show that the Defendants acted consciously or with conscious disregard for the consequences of improperly servicing the loan. Therefore, the Plaintiff has also failed to state a sufficient claim for wantonness, and this count is due to be dismissed.

**E.      THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR SLANDER OF CREDIT**

These allegations in Count III for slander to credit are solely based on inaccurate information Defendants allegedly reported to credit reporting agencies. As such, these claims are preempted under FCRA, and due to be dismissed. *Collins v. BSI Financial Services*, No. 2:16-CV-262-WHA, 2016 WL 6776284 at *8 (M.D. Ala. Nov, 15, 2016); *see also Goodreau v. US Bank Tr. Nat'l Ass'n*, No. 2:19-CV-0269-JEO, 2019 WL 2601543, at *5-7 (N.D. Ala. June 25, 2019).

To the extent that this Court sees Count III as a claim under the FCRA, it should still be dismissed. The FCRA severely limits when a consumer may bring a private right of action for either willful or negligent noncompliance. *See Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009) (citing 15 U.S.C. § 1682s-2(b)(1)). In order to proceed with such an action, a consumer must first send notice of their dispute to a consumer reporting agency, such as Experian or Equifax. *Id.* Then, the consumer reporting agency must send, and the furnisher of information (i.e., SPS) must receive, notice of the consumer's dispute. *Id.* Once a furnisher receives notice of the dispute, § 1681s-2(b) prescribes the furnisher's duties:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> **(A)** conduct an investigation with respect to the disputed information;
> **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> **(C)** report the results of the investigation to the consumer reporting agency;
> **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
> > **(i)** modify that item of information;
> > **(ii)** delete that item of information; or
> > **(iii)** permanently block the reporting of that item of information.

The Eleventh Circuit has held that a claim under the FCRA is subject to dismissal when the "complaint alleged no facts tending to show that [the defendant] 'willfully' or 'negligently' failed to comply with the FRCA." *Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1557 (11th Cir. 1985); *see also Hinkle v. CBE Grp.*, No. CV 311-091, 2012 WL 681468, at *3 (S.D. Ga. Feb. 3, 2012) *report and recommendation adopted*, 2012 WL 676267 (S.D. Ga. Feb. 29, 2012).

Additionally, to be entitled to actual damages for either willful or negligent noncompliance, sufficient facts must be pleaded to show that the plaintiff has suffered actual damages. *See Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 240 (S.D.N.Y. 2014) (collecting cases). This Court has also found an FCRA claim subject to dismissal when the complaint is lacking facts showing that a consumer sent a dispute to a credit reporting agency and that the agency sent notice of that dispute to the furnisher (i.e., FAMC or Citizens). *See Schlueter v. BellSouth Telecommunications*, 770 F. Supp. 2d 1204, 1207–08 (N.D. Ala. 2010).

Here, there are no facts alleged showing that the Plaintiff sent notice of a dispute to a credit reporting agency and that Citizens or FAMC received notice of that dispute. The Complaint merely says in a conclusory fashion that the Defendants were "provided notice under federal law . . . ." [Doc. 1-1] at p. 8, ¶ 29. There are also no facts alleged showing that Citizens or FAMC negligently or willfully failed to comply with the FCRA. And there are no facts alleged showing that the Plaintiff suffered any damages. Thus, the Plaintiff has failed to state a claim under the FCRA.

## F.   THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR FRAUDULENT MISREPRESENTATION

Count IV for fraudulent misrepresentation is due to be dismissed for several reasons. First, this claim is preempted by the FCRA, as further explained *supra*.  Second, the Plaintiff has failed to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  Third, Plaintiff has not plead his reasonable reliance on the alleged misrepresentation, which is required for this claim.  Fourth, the Plaintiff has not made any allegations of damages.

A.   <u>The Plaintiff Has Failed To Satisfy The Heightened Pleading Standard Of Federal Rule Of Civil Procedure 9(b).</u>

Rule 9(b) of the Federal Rules of Civil Procedure provides that for a claim "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity required by the rule is satisfied when the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001).

In the Count IV of the Complaint, Plaintiff sets out three alleged fraudulent representations:

> The Defendants', Franklin American and Citizens, representatives fraudulently advised the Plaintiff that he was past due on his home loan payments even though the Defendants' representatives possessed evidence of the payments made through the Plaintiffs bank statements. Such statements were negligent, intentional, wanton, reckless, and not founded in the truth and were in violation of the account holder contract or in state or federal law.

> The Defendants', Franklin American and Citizens, representatives fraudulently advised the Plaintiff that they accurately report information to his credit file even though the Defendants' representative possessed evidence of the payments made through the Plaintiff's bank statements.

Complaint, ¶¶ 34-35. These allegations do not meet the pleading requirements articulated in *Ziemba*. There is no doubt that these allegations, taken alone, do not provide the level of detail required to satisfy Rule 9(b). In fact, these allegations are arguably not even representations in the first place, but rather actions taken by the Defendants to which Plaintiff objects.

In *Prickett*, this Court found Plaintiffs' allegations with respect to a letter mailed by the defendant loan servicer to the plaintiff borrower sufficient to meet the requirements of Rule 9(b). This Court noted:

> The letter, which Plaintiffs attached as Exhibit A to the Complaint, provides most of the detail required by *Ziemba*. The face of letter provides that it was sent by BANA to Plaintiffs on October 6, 2010, and it states that BANA received the final installment for the trial period of the modification plan. Based on the provisions of the Complaint discussed above, the Court finds Plaintiffs have presented "enough facts to state a claim that is plausible on its face." Plaintiffs have set forth all that is required.

*Prickett*, 946 F. Supp. 2d at 1245–47 (N.D. Ala. 2013)(*quoting Twombly*, 550 U.S. at 570 (127 S.Ct. 1955)).  This Court's comments on the evidence in Prickett calls attention to how deficient the Plaintiff's allegations are in the instant case.  There is no letter in this case or any other specific statements of fraud.  Accordingly, Plaintiff has failed to meet the pleading requirements in Rule 9(b), and this count should be dismissed.

B.  Plaintiff Has Failed To Adequately Plead Reasonable Reliance.

Plaintiff's fraudulent misrepresentation claim also fails as a matter of law because Plaintiff cannot show the requisite elements of reasonable reliance on any alleged misrepresentation. In *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 5 (Ala. 2004), the Alabama Supreme Court held "for a plaintiff to state a fraud claim, he must show that a misrepresentation induced him to act in a way that he would not otherwise have acted, that is, that he took a different course of action because of the misrepresentation.".  In the case at hand, there are no allegations of any reliance of the Plaintiff based on the alleged misrepresentations of the Defendants.  The Plaintiff asserts in his Complaint that he was not in default on his loan, that he was not behind on his mortgage payments, and that he made his payments every month.  Complaint, ¶ 5.  If the Plaintiff remained current on his mortgage payments as he alleges, then his naked assertion in Paragraph 37 of the Complaint that he detrimentally relied on Chase's alleged promise is not plausible on its face.  Without more, the Plaintiff's naked allegation of "detrimental reliance" is insufficient to state a viable fraud claim, and should be dismissed.  *See*

*Bush v. J.P. Morgan Chase Bank, N.A.*, No. 2:15-CV-00769-JEO, 2016 WL 324993, at *11 (N.D. Ala. Jan. 27, 2016).

    C.   The Plaintiff Has Not Alleged Any Facts Concerning Damages.

Lastly, the Plaintiff has failed to plead any facts showing how he was damaged. He only says that he "was caused to lose money and suffer emotionally and physically as a result of Defendants' fraudulent actions" and he seeks "judgment . . . against the Defendants in an amount not to exceed $75,000 for compensatory damages." Complaint, ¶ 40. There are no compensatory damages listed in the Complaint. This "formulaic recitation of the elements of a cause of action" does not suffice to state a claim for fraud. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Plaintiff has failed to state a claim for fraudulent misrepresentation and the claim should be dismissed.

## G.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR FRAUD

    Plaintiff's Count IV for fraud includes only two allegations:

    39. The Defendants', Franklin American and Citizens, representatives' actions in paragraphs twenty-nine (29) and thirty (30) of this Complaint were fraudulent.

    40. The Plaintiff was caused to lose money and suffer emotionally and physically as a result of Defendants' fraudulent actions.

Complaint, ¶¶ 39-40. Paragraph 29 and 30 of the Complaint are paragraphs in the Plaintiff's slander to credit count and involve allegations exclusively concerning the Defendant's alleged misreporting of Plaintiff's payments to credit bureaus.

    Setting aside the fact that all claims related to credit reporting are preempted by the FCRA as explained *supra*, the fraud claim fails because the Plaintiff has failed to state a particularized claim. Fraud claims must be pleaded with particularity. *See* Fed. R. Civ. P. 9(b). This requires that a plaintiff "allege (1) the precise statements, documents, or misrepresentations

made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (citation omitted).  It is a universally recognized dictum of federal law that, pursuant to Federal Rule of Civil Procedure 9(b), allegations of fraud are subject to a heightened pleading standard that requires a plaintiff to plead with particularity "the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citation omitted).

Looking outside the specifically referenced Paragraphs 29 and 30, the only allegations of statements made by the Defendant in the entire Complaint are as follows:

> 9. [] Citizens' representative conceded to Spencer that his March 2020 payment had been misapplied.

> 10. In a conversation with Citizens' representative, identified as Preston, he advised Spencer that Citizens had returned his March payment because Citizens had "no idea how to apply it."

Complaint, ¶¶ 9-10. First, these allegations cannot support fraud no matter what the detail of pleading because they do not involve a "false representation," only an act Plaintiffs disagree with. Second, the statement in Paragraph 9 is simply an alleged concession by the Defendants that a payment was misapplied, and does not give fair notice to the Defendants of any alleged fraud. The Plaintiff does not to state with any particularity who made the statement, or when it was made.  The statements in Paragraphs 9 and 10 both fail to state how the statements misled the Plaintiff. *See Ziemba*, 256 F.3d at 1202.

Next, the Complaint fails to allege what the Defendants stood to gain from giving this allegedly false information. There are no allegations of fact to suggest that the alleged statements

occurred in the context of trying to persuade Plaintiff to take or refrain from any particular action.

Lastly, as with fraudulent misrepresentation, the Plaintiff has failed to plead any facts showing how he was damaged. He only says that he "was caused to lose money and suffer emotionally and physically as a result of Defendants' fraudulent actions" and he seeks "judgment . . . against the Defendants in an amount not to exceed $75,000 for compensatory damages." Complaint, ¶ 40. There are no compensatory damages listed in the Complaint. This "formulaic recitation of the elements of a cause of action" does not suffice to state a claim for fraud. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Plaintiff has failed to state a claim for fraud and the claim should be dismissed.

## H.   THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR NEGLIGENT AND/OR WANTON TRAINING, SUPERVISION AND RETENTION

Plaintiff's negligent or wanton supervision claim in Count VI is also due to be dismissed because Plaintiff has not pleaded a cognizable tort by any allegedly improperly supervised employee. "To establish a claim for negligent, reckless or wanton supervision, a plaintiff must show that '(1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would haves gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice accurately.'" *Ellis v. Bank of Am. NA*, No. 2:19-CV-00310-RDP, 2019 WL 4644458, at *6 (N.D. Ala. Sept. 24, 2019) (*quoting Shuler v. Ingram & Assocs*., 710 F. Supp. 2d 1213, 1227-28 (N.D. Ala. 2010)).

As described *supra*, all of Plaintiff's tort claims are preempted by the FCRA. Therefore, no tort is recognized under Alabama law based on the facts at hand. Furthermore, in order to recover on the negligent supervision claim, Plaintiffs must show that the Defendants actually knew of, or should have discovered in the exercise of due diligence, the claimed unfitness of

their employees which allegedly resulted in harm to Plaintiffs. *Beale v. Ocwen Loan Servicing, LLC*, No. 7:15-CV-00397-LSC, 2015 WL 3767246, at *4 (N.D. Ala. June 17, 2015)(*citing Sanders v. Shoe Show, Inc*., 778 So. 2d 820 (Ala. Civ. App. 2000)) *and Collins v. Wilkerson*, 679 So. 2d 1100 (Ala. Civ. App. 1996)). In *Goodreau v. US Bank Tr. Nat'l Ass'n*, No. 2:19-CV-0269-JEO, 2019 WL 2601543, at *8 (N.D. Ala. June 25, 2019), this Court held:

> Goodreau has not pleaded any acts regarding how US Bank or BSI employees handled her loan, what training and supervision they received, or what notice either Defendant had of their alleged incompetency. She has offered no facts from which the court could even infer that she has a plausible claim against either Defendant for failure to properly train and/or supervise their employees. Accordingly, Defendants' motion to dismiss Plaintiff's negligence and wantonness claims is due to be granted.

*Goodreau v. US Bank Tr. Nat'l Ass'n*, No. 2:19-CV-0269-JEO, 2019 WL 2601543, at *8 (N.D. Ala. June 25, 2019).

In the case at hand, other than a conclusory recitation of this element of the claim, there are no factual allegations in the Complaint from which it can be plausibly inferred that the Defendants had actual notice of the alleged shortcomings of its employees' actions. The mere conclusory statement that the Defendants acted negligently and wantonly is insufficient to state a claim for negligent and wanton supervision, and therefore Count VI should be dismissed.

## I.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR CONSUMER CREDIT PROTECTION ACT

In Count VII of the Complaint, the Plaintiff makes a claim titled "Consumer Credit Protection Act" (CCPA).  This count is made up of three allegations:

> 44. The Consumer Credit Protection Act 15 U.S. §1601-1693 was designed by Congress to protect consumers from the unconscionable actions of individuals in the financial and banking industry.

> 45. The Defendants', Franklin American and Citizens, representatives' actions were in violation of federal law including but not limited to the Consumer Credit Protection Act 15 U.S. §1601-1693.

18

46. The Defendants' representatives' actions proximately caused the Plaintiff to suffer injuries and damages.

[Doc. 1-1] at p. 12, ¶¶ 44-46.

These statements clearly do not meet the Rule 8 requirement of a "a short and plain statement of the claim showing that the pleader is entitled to relief."  There is no way for Defendants to tell which of the 92 sections Plaintiff cited they allegedly breached or what conduct allegedly resulted in the breach. The CCPA itself is comprised of several federal acts, including the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* In fact, it is far more than 92 sections of the CCPA that the Plaintiff seems to claim was violated, as he says that the Defendants "were in violation of federal law *including but not limited to* the Consumer Credit Protection Act . . . ." It goes without saying that a Plaintiff cannot declare a violation of an amorphous federal law and meet the pleading standards set forth by *Twombly* and *Iqbal*. Such a method of pleading is nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" which is improper. *Iqbal*, 556 U.S. at 678. The Plaintiff has failed to state a claim under the CCPA and the claim must be dismissed.

**J.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Count VII of Plaintiff's Complaint asserts a claim for intentional infliction of emotional distress, which is better known within the state of Alabama as the tort of outrage. "In order to recover on the tort of outrage, a plaintiff must demonstrate that the defendant's conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1235-36 (N.D. Ala. 2013) (*quoting Green Tree Acceptance, Inc. v. Standridge*, 565 So.2d 38, 44 (Ala. 1990)).

In the case at hand, the Plaintiff has not alleged severe emotional distress, which is one of the three elements of this claim.  Further, the Alabama Supreme Court has "consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Costine*, 946 F. Supp. 2d at 1236 (N.D. Ala. 2013).  In fact, as the Alabama Supreme Court explained, the tort of outrage is "so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Id.* (*quoting Little v. Robinson*, 72 So.3d 1168, 1172 (Ala.2011)).

Distilling Plaintiff's allegations down, he has effectively alleged that the Defendants: (1) mishandled or improperly applied two mortgage payments; and (2) harassed him about his alleged default. These allegations are simply not comparable to the three contexts in which the Alabama Supreme Court has permitted outrage claims to go before a jury. Unsurprisingly, several federal courts have dismissed outrage claims based on similar allegations of mortgage servicing deficiencies. *See, e.g., Jackson v. Countrywide Home Loans, Inc*., 2012 WL 777180, at *8 (M.D.Ala. Mar. 7, 2012) ("Plaintiff's tort of outrage claim, which is related to Defendants' alleged debt collection efforts and which does not fall into one of the presently recognized contexts in which a tort of outrage claim is appropriate, is due to be dismissed."). For these reasons, Plaintiff's outrage claim is due to be dismissed.

## K.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INJUNCTION

In Count IX, the Plaintiff seeks unspecified "injunctive relief" under the Alabama Deceptive Trade Practices Act, the FCRA, and Alabama common law.  This is not a proper count.  Plaintiff has not made a claim against Defendants under the Alabama Deceptive Trade Practices Act, and therefore cannot make a stand alone claim for injunctive relief under that act.

The same is true with respect to the FCRA unless Count VII for "Consumer Credit Protection Act" is actually a claim under the FCRA, which as explained *supra*, Defendants cannot interpret based on how that count is plead. Additionally, with respect to the FCRA, "courts have noted that the sections that grant private rights of action for willful and negligent noncompliance with the FCRA list types of relief available to individuals, and that list does not include equitable relief. In contrast, § 1681s(a), which discusses remedies available to the Federal Trade Commission and other agencies, specifically grants the FTC the right to seek injunctions for violations of the FCRA. From this the courts have concluded that the exclusion of equitable remedies was purposeful, and that Congress intended the power to obtain injunctive relief to lie exclusively with the FTC." *Hamilton v. DirecTV, Inc.*, 642 F. Supp. 2d 1304, 1305–06 (M.D. Ala. 2009)(emphasis added)(citation omitted).

Finally, with respect to both "Alabama common law" and the Alabama Deceptive Trade Practices Act, FCRA preempts state law to the extent that the state law is inconsistent with the FCRA.

> Because the FCRA vests the FTC exclusively with the right to seek injunctive relief, the court finds that a state law claim that grants a private litigant access to equitable relief would frustrate and conflict with the FCRA. As another court in this district has recognized, the FCRA authorizes district courts to enforce "liability" under the act, not to ensure "compliance," which, according to the FCRA, is to be enforced by the FTC.

*Hamilton v. DirecTV, Inc*., 642 F. Supp. 2d 1304, 1306–07 (M.D. Ala. 2009)(*citing Jones v. Sonic Auto., Inc*., 391 F. Supp. 2d 1064, 1066 (M.D. Ala. 2005)). "Allowing individuals to [seek injunctive relief] would undermine the discretion vested in the FTC." *Hamilton*, 642 F. Supp. 2d 1304 at 1307 (M.D. Ala. 2009).  The *Hamilton* Court held, "Hamilton's request for injunctive relief under state law is inconsistent with the FCRA, and, therefore, preempted under § 1681h(e) of the FCRA."  The same is true in the case at hand.  The Plaintiff cannot receive injunctive

relief under Alabama common law, the Alabama Deceptive Trade Practices Act, or the FCRA, and this count should be dismissed.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Court grant their Motion to Dismiss the Complaint.

Respectfully submitted, this 23rd day of December 2020.

*/s/ Amanda M. Beckett*
AMANDA M. BECKETT
Alabama Bar No. ASB-1884-N75B
**RUBIN LUBLIN, LLC**
428 N. Lamar Blvd., Suite 107
Oxford, Mississippi 38655
(601) 398-0153 (Telephone)
(470) 508-9203 (Facsimile)
abeckett@rlselaw.com

*Attorney for Citizens Bank, N.A. and FAMC Subsidiary Company*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have, this 23rd day of December 2020, filed the within and foregoing by CM/ECF, which will serve notice on all parties.

*/s/ Amanda M. Beckett*
AMANDA M. BECKETT
Alabama Bar No. ASB-1884-N75B

23